**ORIGINAL**

# In the United States Court of Federal Claims

**FILED**

No. 15-570C
Filed: June 22, 2015

JUN 22 2015

U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * *

| | |
|---|---|
| **DALLAS MATTHEW ALSTON-BULLOCK,** * | |
| Plaintiff, * | Pro Se Plaintiff; In Forma Pauperis Application; Lack of Subject Matter Jurisdiction. |
| v. * | |
| **UNITED STATES,** * | |
| Defendant. * | |

* * * * * * * * * * * *

**Dallas Matthew Alston-Bullock,** Norlina, NC, pro se.

**Sean A. Siekkinen,** Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were **Robert E. Kirschman, Jr.**, Director, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, Washington, D.C.

## ORDER

On June 4, 2015, plaintiff Dallas Matthew Alston-Bullock filed a one and one-third page, handwritten pro se letter in the United States Court of Federal Claims, along with an application to proceed in forma pauperis, to which he attached a trust fund account statement from the North Carolina Department of Public Safety.

The full complaint reads as follows:[1]

1) I Dallas Bullock claim and demand a Judgment, against the United States. In an amount of $ 400,000 for an unjust conviction and Imprisonment. Which was given to me by way of plea, Which I was tricked and that is unjust. My lawyer took my trust in him and used it against me. He knew by me trusting in him I would not question him, about what I was signing.

---

[1] Capitalization, grammar, spelling and punctuation errors are quoted in this Order as they appear in plaintiff's submissions.

2) I was given 240 months and a miximum of 270 months for Second Degree Murder on 1/19/08. Which to the most I should have been charged with, An accessory charge. The weapon that was used as mine came back without my fingerprints.

3) They gave me an aggravating factor under 15A-1340.16 marked as number 15. On my Sheet which says I took advantage of a position, of trust or confidence, including a domestic relationship, to commit the offens. Which I had never seen or meet the young man before in my life. My lawyer done to me what they are saying I done to that young man. Which makes me not knowingly Signing a Plea if he would haved told me. I would not have sign the Plea under those grounds, cause I did not know the young man.

4) They gave me a Plea of Guilty of Second Degree Murder on 1/19/08 the G.S. No is 14-17 Common Law. (F)32. This was very unjust to me and my Family cause I have been put here. Unjustly and falsly under grounds I knew nothing about. I put my trust in my lawyer which I should not have done. I really thought he was trying to help me but was not.

        Thank you very much
        Dallas Bullock
            0676654

/s/

    The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 2015 WL 527500 (Fed. Cir. Feb. 10, 2015), cert. denied, 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a

preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

Even granting the more liberal construction afforded to pro se plaintiffs, it is not clear from the assertions in Mr. Bullock's vague and confused complaint what would be the basis for this court's jurisdiction. It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506); Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir. 2004) (citing Textile Prods., Inc. v. Mead

Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub nom. Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006)); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the Rules of the United States Court of Federal Claims (RCFC) and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2014); Fed. R. Civ. P. 8(a)(1), (2) (2015); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking

a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

Although Mr. Bullock's brief letter states that plaintiff is seeking "a Judgment, against the United States," in the amount of $400,000.00, Mr. Bullock's substantive claims appear to be directed against the State of North Carolina and the North Carolina state courts in which he was convicted. This court, however, lacks jurisdiction over claims against the state of North Carolina or the North Carolina courts. The United States Supreme Court has indicated that for suits filed in the United States Court of Federal Claims and its predecessors, "[i]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588 (1941) (citation omitted). Stated differently, "the only proper defendant for any matter before this court is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) (emphasis in original); see also United States v. Sherwood, 312 U.S. at 588. Thus, the court does not have jurisdiction over plaintiff's grievances against the State of North Carolina, or its public institutions. See Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1308 (Fed. Cir. 2007); Reid v. United States, 95 Fed. Cl. 243, 248 (2010) ("The Court of Federal Claims does not have jurisdiction to hear plaintiff's claims naming states, localities, state government agencies, local government agencies and private individuals and entities as defendants."); Gharb v. United States, 112 Fed. Cl. 94, 96 (2013) (quoting Shalhoub v. United States, 75 Fed. Cl. 584, 585 (2007) ("When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations.")); Woodson v. United States, 89 Fed. Cl. 640, 649 (2009) (citing Shalhoub v. United States, 75 Fed. Cl. at 585).

Only the United States Supreme Court may review the decisions of state courts, and the Supreme Court may only do so after a state's highest court has rendered a final decision. See 28 U.S.C. § 1257 (2012) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923); see also Mora v. United States, 118 Fed. Cl. 713, 716 (2014) ("[T]his court does not have jurisdiction to review the decisions of state courts, federal bankruptcy courts, federal district courts, or federal circuit courts of appeals."); Jiron v. United States, 118 Fed. Cl. 190, 200 (2014) (citing Johnson v. Way Cool Mfg., L.L.C., 20 F. App'x 895, 897 (Fed. Cir. 2001)). As none of plaintiff's claims are made against the United States, this court lacks jurisdiction over his complaint.

To the extent that Mr. Bullock may be raising a claim of ineffective assistance of counsel and a violation of his rights under the Sixth Amendment to the United States Constitution, the claim is not one over which the court has jurisdiction. The Sixth Amendment is not money-mandating and, therefore, jurisdiction to review these claims does not lie in this court. See Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) (finding that the court lacks jurisdiction over plaintiff's Sixth Amendment claims because the Sixth

Amendment is not money-mandating); Turpin v. United States, 119 Fed. Cl. 704, 707 (2015) ("To the extent that Ms. Turpin's complaint brings constitutional challenges under . . . the Sixth Amendment, the Court cannot hear such claims . . . ."); Gable v. United States, 106 Fed. Cl. 294, 298 (2012) ("[T]he United States Court of Federal Claims does not have jurisdiction to adjudicate the alleged violations of Plaintiff's Sixth Amendment rights, because that constitutional provision is not money-mandating."); Treece v. United States, 96 Fed. Cl. 226, 231 (2010) (citing Milas v. United States, 42 Fed. Cl. 704, 710 (1999) (finding that the Sixth Amendment is not money-mandating)); Smith v. United States, 51 Fed. Cl. 36, 38 (2001) (internal citations omitted) (finding that the Court of Federal Claims lacks jurisdiction over Sixth Amendment ineffective assistance of counsel claims), aff'd, 36 F. App'x 444 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 537 U.S. 1010 (2002).

Although Mr. Bullock suggests in his complaint that he was unjustly convicted, the jurisdiction of this court also does not include the power to review criminal convictions. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); Lott v. United States, 11 Cl. Ct. 852, 852-53 (1987); see also Cooper v. United States, 104 Fed. Cl. 306, 312 (2012); Dethlefs v. United States, 60 Fed. Cl. 810, 814 (2004) (citing Lucas v. United States, 228 Ct. Cl. 862, 863 (1981)); Humphrey v. United States, 52 Fed. Cl. 593, 596 (2002) ("This Court has no authority to re-examine in detail the facts surrounding a conviction or imprisonment; such matters are within the sole discretion of the appropriate (usually district) court or executive officer with the authority to reverse, set aside, or pardon a claimant's original conviction."), aff'd, 60 F. App'x 292 (Fed. Cir. 2003). Therefore, the court lacks the jurisdiction to consider plaintiff's apparent unjust conviction claim.

Along with his pro se complaint, plaintiff submitted an application to proceed in forma pauperis, asserting that he is unable to pay the required filing fees, and requesting waiver of court costs and fees. On his application, plaintiff indicates that he is not employed, has not received income from any source in the last twelve months, and has no cash or money in any bank accounts, nor does he own any real estate, stocks, or other valuable assets. Mr. Bullock's application further indicates that he is presently in prison. Plaintiff included a trust fund account statement from the North Carolina Department of Public Safety, covering the six-month period prior to the filing of his complaint, along with his application to proceed in forma pauperis.

In order to provide access to this court to those who cannot pay the filing fees mandated by RCFC 77.1(c) (2014), the statute at 28 U.S.C. § 1915 permits a court to allow plaintiffs to file a complaint without payment of fees or security under certain circumstances. The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis, is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Fuentes v. United

States, 100 Fed. Cl. 85, 92 (2011). In Fiebelkorn v. United States, the United States Court of Federal Claims indicated:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be "unable to pay such fees." 28 U.S.C. § 1915(a)(1). To be "unable to pay such fees" means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Hayes v. United States, 71 Fed. Cl. 366, 369 (2006). Although Mr. Bullock's income level might qualify him for in forma pauperis relief, as discussed above, his complaint is being dismissed for lack of jurisdiction.

For the foregoing reasons, the plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

*[signature]*
**MARIAN BLANK HORN**
**Judge**